**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Murray Hooper,<br><br>Plaintiff,<br><br>v.<br><br>Mark Brnovich, et al.,<br><br>Defendants. | No. CV-22-01923-PHX-SMM<br><br>**ORDER** |

Plaintiff Murray Hooper is scheduled to be executed on Wednesday, November 16, 2022. On November 10, 2022, he filed this 42 U.S.C. § 1983 action against Arizona Attorney General Mark Brnovich and City of Phoenix Police Chief Michael Sullivan[1] challenging the state courts' adjudication of his request for forensic testing under Arizona Revised Statutes §§ 13-4240 and 13-4241. Plaintiff also filed an Emergency Motion for Temporary Restraining Order or Preliminary Injunction (Doc. 3). The Court directed Defendants to file a response no later than Sunday November 13, 2022 at 5:00 p.m. (Doc. 5). The Court did not permit a reply.

After review of the Complaint, Plaintiff's Motion, and the State's response, the Court will deny Plaintiff's motion for emergency relief.[2]

**I.  Background**

On December 31, 1980, Pat Redmond and Helen Phelps were murdered in their

---
[1] Plaintiff initially named former City of Phoenix Police Chief Jeri Williams, but filed a Notice of Substitution (Doc. 6).
[2] Plaintiff did not request oral argument and the Court finds that a hearing is not necessary to resolve Plaintiff's motion for injunctive relief.

home. Marilyn Redmond, Pat's wife, was critically injured but survived. Plaintiff and two co-conspirators were arrested, charged, and convicted of multiple crimes. Evidence used to convict Plaintiff included Marilyn's positive identification, witness testimony incriminating Plaintiff, evidence Plaintiff was in Phoenix at the time of the murders, and testimony from cooperating witnesses.

Plaintiff's post-conviction attempts to challenge his conviction were unsuccessful and, on August 26, 2022, the State filed a motion for warrant of execution. On September 22, 2022, Plaintiff filed a request for postconviction DNA and forensic testing under A.R.S. §§ 13-4240 and 13-4241. Specifically, Plaintiff sought an order for testing of fingerprints "lifted from the crime scene" under A.R.S. § 13-4241(A)(2) and DNA testing of the "bloodied kitchen knife" pursuant to A.R.S. § 13-4240(B) and (C).

The superior court denied the motion, stating "the Court cannot find that 'a reasonable probability exists that [Defendant] would not have been prosecuted or convicted if exculpatory results had been obtained through the new forensic testing.'" (Doc. 1-1 at 23, Ex. B). The Arizona Supreme Court affirmed the denial of Plaintiff's request.

Plaintiff then filed his § 1983 Complaint in this matter. He presents four claims for relief based on the denial of forensic testing: (1) denial of due process, (2) denial of meaningful access to the courts, (3) cruel and unusual punishment, and (4) denial of opportunity to prove actual innocence (Doc. 1). In his motion for emergency injunctive relief, Plaintiff focuses only on his claim that the denial of forensic testing results in a denial of due process. Plaintiff contends the "purpose of A.R.S. § 13-4240 and A.R.S. § 13-4241 is thwarted by precluding access to DNA and fingerprint testing and blocking constitutionally required access to other related post-conviction relief." Further, Plaintiff argues that he "articulated a theory of innocence and demonstrated a reasonable probability that DNA and fingerprint testing could prove [his] innocence" and, therefore, the state court's construction of the statutes imposes a "nearly impossible burden" on Plaintiff that violates his right to due process of law.

Because of the pendency of Plaintiff's execution, the Court ordered the State to file

an expedited response. The State opposes Plaintiff's motion, arguing this § 1983 is an impermissible appeal of the state court's decision and is therefore barred by the *Rooker-Feldman* doctrine. Alternatively, the State argues that Plaintiff is not likely to succeed on the merits of his claim and, as a result, is not entitled to an injunction.

**II.     Standard for Injunctive Relief**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right").

A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

When the government opposes a preliminary injunction, "[t]he third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021). The "balance of equities" concerns the burdens or hardships to a prisoner complainant compared with the burden on the government defendants if an injunction is ordered. *Id.* The public interest primarily concerns the injunction's impact on nonparties rather than parties. *Id.* (citation

omitted). However, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (citation omitted).

Regardless of which standard applies, the movant "has the burden of proof on each element of either test." *See Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Generally, "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015); *see De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunctive relief is inappropriate for matters "lying wholly outside the issues in the suit").

## III. Discussion

Plaintiff's request is straightforward. He asserts he was denied due process by the denial of his request for forensic testing of key pieces of evidence recovered from the crime scene that were not previously tested for DNA or fingerprints. He contends the state court read into the statutes "a near impossible requirement—that Plaintiff must prove his innocence as a precondition of obtaining [testing]."

### A. *Rooker-Feldman*

The State first contends Plaintiff is unlikely to succeed on the merits of his claim because it is barred by the *Rooker-Feldman* doctrine, which precludes litigants from employing § 1983 to obtain federal review of state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012).

The Supreme Court has not foreclosed a § 1983 challenge to a state court's denial of forensic testing. In *Skinner v. Switzer*, 562 U.S. 521, 531 (2011), the Court held the prisoner did "not challenge the adverse [state court] decisions themselves; instead he target[ed] as unconstitutional the Texas statute they authoritatively construed"; that is, the prisoner's claim assailed the state courts' construction of the statute "to completely foreclose any prisoner who could have sought DNA testing prior to trial, but did not, from seeking testing postconviction." *Id.* at 531, 532.

The following year, the Ninth Circuit distinguished *Skinner* and held that a prisoner's challenge to the denial of forensic testing was barred by *Rooker-Feldman* because he did not challenge the statute's constitutionality or categorical prohibition on testing, but rather the application of the statute to his request. *Cooper*, 704 F.3d at 781.

Arizona Revised Statutes § 13-4241(B)(1)-(4) provides that testing shall be ordered if the following conditions are met:[3]

> 1. A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through the new forensic testing.
>
> 2. The evidence is still in existence and is in a condition that allows the new forensic testing to be conducted.
>
> 3. The evidence was not previously subjected to . . . the analysis or comparison that is now requested.
>
> 4. The new forensic testing may resolve an issue that was not previously resolved by any other testing.

Ariz. Rev. Stat. § 13-4241(B)(1)-(4). "Reasonable probability" is not defined. As the Court understands Plaintiff's argument, he believes the state court twisted that standard into a requirement Plaintiff must "prove his innocence as a precondition of obtaining DNA and fingerprint testing." So construed, that would be a categorical challenge akin to the challenge in *Skinner* rather than an individualized challenge as addressed in *Cooper*. Accordingly, Plaintiff's challenge is not barred by the *Rooker-Feldman* doctrine.

---

[3] Ariz. Rev. Stat. § 13-4240(B)(1)-(4) provides the same conditions as to deoxyribonucleic acid testing

### B. Due Process

Plaintiff alleges that "failure to provide relief for a possibly innocent prisoner amounts to an 'arbitrary' abridgement of the '[f]reedom from bodily restraint [that] has always been at the core of the liberty protected by the Due Process Clause.'" (Doc. 3 at 4-5) (citing *Foucha v. Louisiana*, 504 U.S. 71, 79–80 (1992)). To determine whether Plaintiff was afforded due process, the Court must determine "whether consideration of [Plaintiff's] claim within the framework of the State's procedures for postconviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Dist. Atty's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009) (quoting *Medina v. California*, 505 U.S. 437, 446 (1992)). Thus, a federal court "may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.*

Under this standard, Plaintiff has not established a likelihood of success on the merits of his claim. Plaintiff contends that the absence of his DNA and fingerprints on the knife and tape, or the presence of others' forensic material would demonstrate that he "had been framed by perjurious witnesses." On the contrary, the absence of Plaintiff's fingerprints, or additional fingerprints would not undermine the remaining evidence of his guilt. It would not undermine Ms. Redmond's unwavering identification, evidence that Plaintiff was in Phoenix at the time of the murders, or the testimony of witnesses who knew about Plaintiff's participation in the murders.

Plaintiff further contends that the state court concluded he would have still been prosecuted and convicted "had new testing demonstrated that Plaintiff-Petitioner had been framed by the paid and perjurious witnesses, whose fingerprints place them inside the residence." This is a mischaracterization of the state court's decision. Plaintiff contends that if forensic testing shows the absence of Plaintiff's or the presence of another individual's DNA and fingerprints on the tape and knife, such evidence would automatically establish Plaintiff is innocent and was framed. Plaintiff's execution,

therefore, would "amount[] to an abject violation of the statute and due process, and set[] a dangerous precedent that may result in the execution of an innocent man." The flaw in Plaintiff's reasoning is concluding that this testing will automatically establish his innocence. Even if forensic testing establishes what Plaintiff hopes it will, that alone will not invalidate the other evidence used to convict him. And because the state court decision did not make the logical leap Plaintiff ascribes, it was not a violation of due process to conclude he is not entitled to forensic testing. The state court did not require Plaintiff to establish actual innocence to qualify for forensic testing under the statute.

In short, Plaintiff attempts to conflate possibilities for probabilities. There is no reasonable likelihood that forensic testing—even if it shows what Plaintiff hopes it will—would have precluded his prosecution or conviction. As a result, the state court's denial of his request did not deprive Plaintiff of due process.

Because the plaintiff bears the burden of "demonstrat[ing] that [he] meets all four" factors in order to obtain a preliminary injunction, *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776-77 (9th Cir. 2011), and Plaintiff has failed to meet the first factor under either standard, his motion for injunctive relief must be denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Emergency Preliminary Injunction (Doc. 3) is **denied**.

**IT IS FURTHER ORDERED** the Clerk of Court must send a copy of this Order to the Ninth Circuit Court of Appeals.

Dated this 14th day of November, 2022.

_____
Honorable Stephen M. McNamee
Senior United States District Judge